IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL STOLTZFUS, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 09-491 |
| | : | |
| OLD ORDER AMISH HELPING | : | |
| PROGRAM, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

STENGEL, J.                                                             February 26, 2009

The plaintiffs petitioned this court on February 4, 2009 for an Order temporarily restraining the defendants from evicting them and their eleven (11) children from the property located at 834 Pumping Station Road in Kirkwood, Pennsylvania. The eviction was scheduled to occur on the following day. After an *ex parte* conference with counsel for the plaintiffs, I entered the requested Temporary Restraining Order, and set a hearing on the preliminary injunction to be held on February 19, 2009, ten (10) days from the entry of the Order, in keeping with Rule 65(b)(2) of the Federal Rules of Civil Procedure.

Rule 65 provides in pertinent part that the "court may issue a temporary restraining Order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Here, the Temporary Restraining Order was based on specific facts alleged in the verified complaint. These facts, if true, tended to establish immediate

and irreparable injury to the plaintiffs including the eviction and subsequent homelessness of the family, and the inability of the plaintiffs to continue to operate their business which was conducted on the "one of a kind" property. For the following reasons, the temporary restraining Order shall be lifted and the motion for a preliminary injunction[1] denied.

The verified complaint alleges that the plaintiffs, members of the Amish faith since birth, were the fee simple owners of the property in question since 1997. Compl. ¶¶ 20, 22. They owned and operated a metal working business on the property. Id. ¶ 21. On October 9, 2001, the plaintiffs borrowed $300,000 from the Old Order Amish Helping Program, and granted it a mortgage to secure the loan. Id. ¶¶ 23-24. The plaintiffs were required according to the terms of the mortgage to maintain insurance on the property, including hazard insurance, solely through the Amish Aid Society. Id. ¶¶ 25, 27.

The complaint also alleges that by July 2003, the metal working business was prospering and employed between eight to ten workers. Id. ¶ 28. A council member of the Amish Society of Lancaster and authority of the local district notified the husband plaintiff that he would have to keep his business from growing any further or all of his employees would be forced to resign. Id. ¶ 29. Mr. Stoltzfus complied and did not enlarge his business. Id. ¶ 31. Two weeks later, however, none of his employees showed

---

[1] For a preliminary injunction, a moving party must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting the preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); see also U.S. v. Bell, 414 F.3d 474 (3d Cir. 2005).

up for work. Id. ¶ 32. The plaintiffs believe that the employees were given an ultimatum by the defendants to stop working for the plaintiffs or be shunned from the Amish community. Id. ¶ 33. Thereafter, the plaintiffs renounced their membership in the Amish Society. Id. ¶ 34.

The plaintiffs further allege that during this time period, members of the Council attempted to get Mrs. Stoltzfus to leave her husband, and made an allegedly false police report indicating that Mr. Stoltzfus was holding his wife against her will. Id. ¶ 35. After investigation, Mr. Stoltzfus was cleared of wrong doing. Id. ¶ 36. It is also alleged that members of the Council contacted the authorities and accused the plaintiffs of abusing their children by not being able to care properly for them. Id. ¶ 37. This report was also found to be inaccurate upon investigation. Id. ¶ 38.

In August 2003, the plaintiffs received a letter from the Old Order Amish Helping Program indicating that their mortgage would be affected due to the issues the plaintiffs had with the Council, and reminding the plaintiffs that the program was for Old Order Amish members only. The plaintiffs were next verbally informed that the required hazard insurance policy was cancelled despite having been paid in full. Id. ¶¶ 39-40. Although the plaintiffs were able to obtain quotes from other insurance companies, the defendants found them unacceptable. Id. ¶ 41. The defendants informed the plaintiffs that their mortgage was in default. Id. ¶ 42. In November 2003, the Administrator of the Old Order Amish Helping Program went to the property and verbally informed the plaintiffs

that they were in default of the mortgage for lack of insurance and demanded payment in full. Id. ¶¶ 43-44. Nevertheless, the plaintiffs continued to make their regular payments until October 2004, when the Old Order Amish Helping Program raised the interest rate on only the plaintiffs' mortgage from 4.25% to 7%. Id. ¶¶ 45-48. The plaintiffs discontinued paying the mortgage in February 2005 when the payment rose from $2100 to $2500 per month. Id. ¶ 50.

The defendants initiated a mortgage foreclosure action in the Court of Common Pleas of Lancaster County. Id. ¶ 50. Judgment was entered against the plaintiffs on January 10, 2007 in the amount of $296,142.01. Id. ¶56. On June 27, 2007, the property was sold at a Sheriff's Sale to Defendant John Glick for $342,100, notwithstanding its approximate worth of between $900,000 to $1,100,000. Id. ¶¶ 57-58. Shortly thereafter, Defendant Glick transferred his interest in the property to three Limited Liability Companies which are also defendants. Id. ¶ 59. The plaintiffs believe that these companies were started by three named partners in the law firm who had represented the Old Order Amish Helping Program in order to mask their individual interests in the property. Id. ¶¶ 60-61.

After the Temporary Restraining Order was issued on February 4, 2009, I received the defendants' response which included information that had not been disclosed to me by the plaintiffs during the emergency conference. For example, when the judgment was entered on January 10, 2007, it was done so pursuant to a settlement agreement and

4

mutual release jointly submitted to the court by the parties. The defendants also indicated that the plaintiffs had filed exceptions to the Sheriff Sale but those exceptions were fully litigated through the Court of Common Pleas of Lancaster County which decided the issues against the plaintiffs initially and upon reconsideration. An appeal to the Pennsylvania Superior Court was eventually quashed.

The defendants also indicated that when the plaintiffs refused to vacate the property, the defendants initiated an "ejectment action." On November 17, 2008, the Court of Common Pleas of Lancaster County entered a Judgment for Possession of the property after consideration of the "joint motion for entry of judgment," which was filed by the parties on November 14, 2008. Had I been apprised during the emergency conference that the plaintiffs had consented both to the entry of judgment during the mortgage foreclosure action, and to the entry of the judgment for possession, I would not have issued the Temporary Restraining Order. The plaintiffs' consent to the ejectment vitiates the "irreparable harm" alleged in the verified complaint.

The defendants also point out that Mr. Stoltzfus filed a personal bankruptcy action just before the Writ of Possession was to be served on the plaintiffs by the Sheriff. On January 13, 2009, the Honorable Bruce I. Fox, United States Bankruptcy Judge, conducted a lengthy hearing on the defendants' motion for relief from the automatic stay of the Bankruptcy Code. On January 21, 2009, Judge Fox issued an Order and Opinion which held that Mr. Stoltzfus' claims were baseless and that the defendants were entitled

5

to relief from the stay. The judge terminated the stay and permitted the defendants to "exercise their non-bankruptcy law rights to eject [the plaintiffs] from the real property located at 834 Pumping Station Road, Kirkwood, Pennsylvania." See In re Daniel Stoltfus, No. 08-17813 (Bankr. E.D. Pa. Jan. 21, 2009). Judge Fox's well-reasoned opinion severely undercuts the likelihood of success on the merits of the plaintiffs' claims.

Given the defendants' more complete and accurate rendition of the circumstances of this case and the apparent misrepresentations about the history of this case, I cannot find that the plaintiffs have met their burden of presenting a showing which meets the requirements for the extraordinary relief of preliminary injunction. In a telephone conference with counsel after the defendants' response was filed, counsel for the Stoltfus' could not refute the defendants' representations about matters already of record in other courts involving these same parties. The "irreparable harm" alleged was triggered by the plaintiffs' own consent. The plaintiffs' likelihood of success on the merits is diminished by the prior state court and bankruptcy court proceedings. Further, I find that consideration of the public interests at stake and of the balance of prospective harms to the parties lends no support to the plaintiffs' motion for preliminary injunction. Accordingly, the Temporary Restraining Order will be lifted and the motion for a preliminary injunction denied.

Finally, I note that Judge Fox also stated in his opinion that the plaintiffs have "no

right to use Chapter 13 in an attempt to vacate state court foreclosure judgments or Orders confirming sheriff sales by seeking to relitigate state court issues in this court." Id. (citing In re Knapper, 407 F.3d 573 (3d Cir. 2005); In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997)). It is likewise well-settled that federal courts lack jurisdiction to review state court judgments where the relief sought is in the nature of appellate review. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Blake v. Papadakos, 953 F.2d 68, 71 (3d Cir. 1992). Under the long-established Rooker-Feldman doctrine, a federal district court has no authority to review judgments of a state court in judicial proceedings. Review of such judgments may be had only in the state appellate courts and in the United States Supreme Court. See 28 U.S.C. § 1257.[2] Recently, the Supreme Court confined the application of the Rooker-Feldman doctrine to those cases (1) brought by state-court losers (2) complaining of injuries caused by state court judgments (3) rendered before the District Court proceedings and (4) inviting District Court review and rejection of those judgments. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Court in Exxon Mobil admonished that "the doctrine has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases." 544 U.S. at 283. Here, the verified complaint alleges violations of the Sherman Anti-Trust Act, the

---

[2] Title 28 of the United States Code, Section 1257 provides that final judgments or decrees rendered by the highest court of a state in which a decision could be had are to be reviewed by the Supreme Court of the United States, not by federal district courts.

Bank Holding Company Act, the Thrift Institutions Restructuring Act, the Fair Housing Act, the Unfair Insurance Practices Act, the Federal Equal Credit Opportunity Act, and various state law claims. These claims seem to focus on injuries not caused by the state court judgments, but instead are attributable to the defendants' alleged misconduct that preceded the state court judgments. Though the plaintiffs' complaint undoubtedly overlaps their adjudicated state court claims, and is based on the same operative facts, this overlap does not automatically mean that the Rooker-Feldman doctrine is applicable here. See Turner v. Crawford Square Apts III, L.P., 449 F.3d 542, 548 (3d Cir. Pa. 2006). As the Court explained in Exxon Mobil, a district court is not divested of subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. See 544 U.S. at 292. Accordingly, I hesitate to dismiss the entire complaint at this early stage of the proceedings without the benefit of further briefing. Instead, I will order the defendants to respond to the complaint being especially mindful of the Rooker-Feldman doctrine, and the doctrines of *res judicata* and issue preclusion.

    An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL STOLTZFUS, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | |
| | : | |
| v. | : | **NO. 09-491** |
| | : | |
| **OLD ORDER AMISH HELPING PROGRAM, et al.,** | : | |
| **Defendants** | : | |

## O R D E R

AND NOW, this 26th day of February, 2009, upon consideration of the plaintiffs' motion for preliminary injunction (Document #2), the defendants' response thereto (Document #4), and after a telephone status conference with counsel, it is hereby ORDERED that the Temporary Restraining Order entered on February 4, 2009 in the above-captioned case is LIFTED, and the motion for preliminary injunction is DENIED.

IT IS FURTHER ORDERED that the defendants shall respond to the plaintiffs' complaint on or before **Wednesday, March 18, 2009**.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.